UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

TOBY JONES

      Plaintiff,                               Case No.: 3:14-cv-161

vs.

COMMISSIONER OF                         Magistrate Judge Michael J. Newman
SOCIAL SECURITY,                   (Consent Case)

      Defendant.

---

**DECISION AND ENTRY: (1) REVERSING THE ALJ'S NON-DISABILITY FINDING AS UNSUPPORTED BY SUBSTANTIAL EVIDENCE; (2) REMANDING THIS CASE TO THE COMMISSIONER UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g) FOR PROCEEDINGS CONSISTENT WITH THIS OPINION; AND (3) TERMINATING THIS CASE ON THE COURT'S DOCKET**

---

This Social Security disability benefits appeal is presently before the undersigned for disposition based upon the parties' consent. Doc. 5. At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff not "disabled" and therefore unentitled to Disability Insurance Benefits ("DIB"). This case is before the Court upon Plaintiff's Statement of Errors (doc. 12), the Commissioner's memorandum in opposition (doc. 13), Plaintiff's reply (doc. 15), the administrative record (docs. 7-8),[1] and the record as a whole.

## I.

### A.    Procedural History

Plaintiff filed for DIB on March 14, 2011 alleging a disability onset date of August 26, 2008. PageID 48. Plaintiff claims disability as a result of a number of impairments including, *inter alia*, degenerative disc disease. PageID 51.

---

[1] Hereafter, citations to the electronically-filed administrative record will refer only to the PageID number.

After initial denial of his application, Plaintiff received a hearing before ALJ Kim S. Nagle on October 10, 2012.  PageID 68.  The ALJ issued a written decision thereafter finding Plaintiff not disabled at Step Four of the sequential benefits analysis.  *See infra* (explaining Step Fourt); *see also* PageID 48-62.  Specifically, the ALJ's findings were as follows:

1.    The claimant meets the insured status requirements of the Social Security Act through March 31, 2009.

2.    The claimant did not engage in substantial gainful activity during the period from his alleged onset date of August 26, 2008 through his date last insured of March 31, 2009 (20 CFR 404.1571 *et seq.*).

3.    Through the date last insured, the claimant had the following severe impairments: degenerative disc disease, history of lumbar fusion (2007), and history of cervical discectomy and fusion (2005 and 2008) (20 CFR 404.1520(c)).

4.    Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

5.    After careful consideration of the entire record, I find[] that, through the date of last insured, the claimant had the residual functional capacity ["RFC"] to perform a range of medium work as defined in 20 CFR 404.1567(c),[2] except the claimant can lift up to 20 pounds frequently and 50 pounds occasionally.  He can never climb ladders, ropes, or scaffolds. The claimant can only occasionally balance, stoop, kneel, crouch, and climb ramps or stairs.  The claimant can tolerate no more than frequent exposure to workplace hazards, such as like dangerous, moving machinery and unprotected heights.

6.    Through the date last insured, the claimant was capable of performing past relevant work as a production worker and material handler.  This work did not require the performance of work related activities precluded by the claimant's [RFC] (20 CFR 404.1565).

---

[2]  "Medium work" involves the occasional lifting of 50 pounds at a time, and frequent lifting or carrying of objects weighing up to 25 pounds.  20 C.F.R. § 404.1567.  Medium work can require standing and walking as much as six hours during any given eight-hour workday.  *Id.*  It may also involve frequent stooping, grasping, holding, and turning objects.  *Id.*  "The functional capacity to perform medium work includes the functional capacity to perform sedentary, light, and medium work."  20 C.F.R. § Pt. 404, Subpt. P, App. 2, § 203.00(a).

7.      The claimant has not been under a disability, as defined in the Social Security Act, at any time from August 26, 2008, the alleged onset date, through March 31, 2009, the date last insured (20 CFR 404.1520(f)).

PageID 51-61.

Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ's non-disability finding the final administrative decision of the Commissioner. PageID 35-37. Plaintiff then filed this timely appeal. *Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 435 (6th Cir. 2007) (noting that, "[u]nder the Federal Rules of Appellate Procedure, [claimant] had 60 days from the Appeals Council's notice of denial in which to file his appeal").

**B. Evidence of Record**

In her decision, the ALJ set forth a detailed recitation of the underlying medical evidence in this case. PageID 51-60. Plaintiff, in his Statement of Errors, sets forth a summary of the record evidence. Doc. 12 at PageID 1223-31. The Commissioner presents no specific objection to Plaintiff's summary. Doc. 13 at PageID 1241-42. Accordingly, except as otherwise noted in this Decision and Entry, the undersigned incorporates Plaintiff's summary and the ALJ's recitation of the evidence.

**II.**

**A. Standard of Review**

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. § 405(g); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found Plaintiff disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, the ALJ has a "'zone of choice' within which he [or she] can act without the fear of court interference." *Id.* at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[A] decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

**B.    "Disability" Defined**

To be eligible for disability benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.*

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin*, 475 F.3d at 730, the complete sequential review poses five questions:

1.    Has the claimant engaged in substantial gainful activity?

2.    Does the claimant suffer from one or more severe impairments?

3.      Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

4.      Considering the claimant's RFC, can he or she perform his or her past relevant work?

5.      Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4); *see also Miller v. Comm'r of Soc. Sec.*, 181 F.Supp.2d 816, 818

(S.D. Ohio 2001). A claimant bears the ultimate burden of establishing that he or she is disabled

under the Social Security Act's definition. *Key v. Comm'r of Soc. Sec.*, 109 F.3d 270, 274 (6th

Cir. 1997).

### III.

In his Statement of Errors, Plaintiff alleges the ALJ erred by: (1) failing to properly

weigh treating source opinions; (2) misinterpreting the vocational expert's ("VE") testimony in

finding that he can perform his past relevant work despite his physical limitations; and (3)

finding him not credible.

### A.     Treating Physicians

The Court first addresses Plaintiff's contention that the ALJ erroneously weighed the

opinions of: (1) Scott West, D.O., his treating neurosurgeon; and (2) Robert Kominiarek, M.D.,

his treating family physician. PageID 1233-37. "[T]he Commissioner's regulations establish a

hierarchy of acceptable medical source opinions[.]" *Snell v. Comm'r of Soc. Sec.*, No. 3:12-cv-

119, 2013 WL 372032, at *9 (S.D. Ohio Jan. 30, 2013). Treating physicians and psychologists

top the hierarchy. *Id.* "Next in the hierarchy are examining physicians and psychologists, who

often see and examine claimants only once." *Id.* "[N]on-examining physicians' opinions are on

the lowest rung of the hierarchy of medical source opinions." *Id.* "The regulations provide

progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual [claimant] become weaker." *Id*. (citing SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996)).

"An ALJ is required to give controlling weight to 'a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s)' if the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 385 (6th Cir. 2013) (citation omitted) (alterations in original). This requirement is known as the "treating physician" rule. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citations omitted). Greater deference is given to treating source opinions "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations[.]" 20 C.F.R. § 404.1527(c)(2); *see also Blakely*, 581 F.3d at 406. An ALJ must give controlling weight to a treating source's opinion if the ALJ finds it well-supported by medically acceptable evidence and not inconsistent with other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Closely associated with the treating physician rule is the "good reasons rule," which "require[s] the ALJ to always give good reasons in [the] notice of determination or decision for the weight given to the claimant's treating source's opinion." *Blakley*, 581 F.3d at 406-07. "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id*. Thus, when the ALJ

6

declines to give controlling weight to a treating physician's assessment, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician."  *Id.* at 406; *see also* 20 C.F.R. § 404.1527(c).  Unless the opinion of the treating source is entitled to controlling weight, an ALJ must "evaluate all medical opinions according to [these] factors, regardless of their source[.]" *Walton v. Comm'r of Soc. Sec.*, No. 97-2030, 1999 WL 506979, at *2 (6th Cir. June 7, 1999).

Here, Dr. West opined that Plaintiff could only stand and sit for thirty minutes at a time; work only four hours per day; lift twenty pounds occasionally; lift five pounds frequently; and only occasionally bend, stoop, and balance.  PageID 1200-01.  Dr. Kominiarek opined that Plaintiff could only stand and sit fifteen minutes at a time; work no hours per day; lift no weight even occasionally; and could never bend, stoop, or balance.  PageID 1202-03.  The ALJ declined to give controlling weight to theses treaters' opinions because she found that they are "inconsistent with other substantial evidence in the record; specifically, the opinion evidence of the reviewing physicians, the opinion of the consultative examiner, the objective signs evidence in the consultative examiner's report and the objective imaging studies in [the] record."  PageID 58.  Plaintiff argues that the ALJ's finding concerning inconsistent clinical signs and objective imaging studies "is entirely unsubstantiated," and points to numerous records indicating "the presence of a significant pathology in both Plaintiff's lumbar and cervical spine."  Doc. 12 at PageID 1234.

However, the records cited by Plaintiff mostly predate the alleged onset date of August 26, 2008, with some dating as far back as 1992.  *See, e.g.,* PageID 399-411, 575.  On the other hand, the ALJ relied significantly on objective testing and clinical findings found closer in time

to Plaintiff's alleged onset date, including: (1) a note from March 26, 2008 stating that Plaintiff's lumbar "x-rays look excellent with evidence of a solid fusion[,]" PageID 386; and (2) an imaging report from January 23, 2009, noting that an x-ray of Plaintiff's cervical spine, following surgery, revealed a stable fusion and no other remarkable findings, PageID 468.  Accordingly, the Court finds that the ALJ appropriately assessed the relevant objective evidence, and her conclusion -- to not accord controlling weight to Plaintiff's treaters -- is supported by substantial evidence.

"[I]n all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (citing Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *4).  The ALJ's analysis of the factors set forth in 20 C.F.R. § 404.1527(c) in determining the ultimate weight accorded, however, presents some issues.  *See* PageID 58-59. Notably, the ALJ afforded "little weight" to the treaters' opinions because they were issued years after Plaintiff's date last insured and, therefore, were "retroactive."[3]  PageID 58-59.  The ALJ, however, gave "great weight" to the opinions of record reviewing physicians Jerry McCloud, M.D. and Maria Congbalay, M.D., who also offered "retroactive" opinions in May 2011 and October 2011, respectively.  PageID 57-58, 111, 121.

The "regulations do not allow the application of greater scrutiny to a treating-source opinion as a means to justify giving such an opinion little weight."  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 380 (6th Cir. 2013).  In fact, the regulations specifically state that, "[w]hen

---

[3]  In order to qualify for DIB, a claimant must "establish the onset of disability *prior to* the expiration or his [or her] insured status."  *Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir. 1984) (citation omitted) (emphasis in original).  "Evidence of disability obtained after the expiration of insured status is generally of little probative value."  *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 845 (6th Cir. 2004) (citation omitted).  To be relevant to the disability decision, "[p]ost-expiration evidence must relate back to the claimant's condition prior to the expiration of her [or his] date last insured."  *Wirth v. Comm'r of Soc. Sec.,* 87 F. App'x 478, 480 (6th Cir. 2003) (citing *King v. Sec'y of Health & Human Servs*., 896 F.2d 204, 205–06 (6th Cir. 1990)).

the treating source has reasonable knowledge of [Plaintiff's] impairment(s)," which, without dispute, the treaters in this case do, the Commissioner "will give the source's opinion more weight than we would give it if it were from a nontreating source."  20 C.F.R. § 404.1527(c)(2)(ii).  Here, the Court finds that the ALJ's critique, regarding the treaters' "retroactive" opinions, applies equally to the opinions of the state agency physicians -- who never had the opportunity to personally examine Plaintiff at any time[4] -- and, therefore, such critique is not a "good reason" for discounting the weight accorded to the treaters' opinions in this case.

Further, in analyzing Dr. West's opinion, the ALJ found that his treatment relationship with Plaintiff was "short-term."  PageID 58.  Dr. West performed three separate spinal surgeries on Plaintiff over a six year period.  PageID 426-27, 459-60; doc. 12 at PageID 1236.  The Commissioner acknowledges the length and nature of Plaintiff's treating relationship with Dr. West, but argues that such treatment was "for short intervals over that span, most of which were related to surgeries, evaluations for surgeries, and follow-up appointments[,]" and that such "evidence of sporadic treatment[] does not undermine the ALJ's conclusion."  Doc. 13 at PageID 1248.  The ALJ, however, never provided such an explanation in her opinion.

The Court finds that, at best, the ALJ's statement regarding a "short-term" relationship is not a "good reason" because, in the absence of further explanation, such reason is ambiguous and not "sufficiently specific to make clear to [the Court] . . . the reasons for [the] weight" given.  *See Gayheart*, 710 F.3d at 376.  At worst, such reason is one wholly unsupported by the record, *i.e.*, a treatment relationship that included three separate surgeries spanning a period of six years

---

[4] The same analysis applies to any suggestion by the ALJ that the weight accorded to Dr. West's opinion should be lessened because it was offered a year or more after his last examination of Plaintiff. *See* PageID 58.  Such a critique rings hollow when the ALJ gave "great weight" to the record reviewing physicians who never examined Plaintiff at any time prior to rendering an opinion.  *See Gayheart*, 710 F.3d at 380.

cannot reasonably be considered "short-term."  Finally, the Court notes, again, the record reviewing physicians had <u>no</u> treatment relationship with Plaintiff and their opinions, nonetheless, were given "great weight."  PageID 57-58.

The Court does note, however, that other reasons set forth by the ALJ in diminishing the weight accorded to the treaters' opinions are supported by the record, namely: medical findings from the relevant time period noting improvement in Plaintiff's condition and increased activity, *see* PageID 58, 286, 412, 428, 1096; and the opinion of examining physician Lynn Richardson, D.O.,[5] PageID 1204-10 (concluding that Plaintiff could lift up to 20 pounds continuously, and 21-50 pounds occasionally).  Thus, there may be some suggestion as to whether the aforementioned errors are harmless.  Under the circumstances here, where Plaintiff would be disabled as a matter of law under the relevant Medical-Vocational Guidelines ("Grid") if limited to even light work, *see* 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 202.06, and the disabling opinions of the two treating physicians of record, *see* PageID 1200-04, the Court finds that the ALJ's errors are not harmless, and warrant remand. *See infra*.

## B.     Vocational Expert Testimony

Plaintiff also alleges that the vocational expert's (VE) testimony contradicts the ALJ's conclusion that Plaintiff can perform his past relevant work despite his physical limitations. PageID 1231.  During the administrative hearing, the VE testified that Plaintiff would be able to perform his past work as a production worker or materials handler if he could perform medium exertional work and could frequently bend, twist, turn, push, pull, squat, kneel, and reach below the knee.  PageID 98-99.  In her decision, the ALJ found that Plaintiff could perform medium

---

[5] As noted by the ALJ, Dr. Richardson "is a board certified physical medicine and rehabilitation expert[,]" a specialization the ALJ noted favorably in weighing her opinion.  PageID 57.  Dr. West, on the other hand, is a Plaintiff's treating neurosurgeon, a specialty the ALJ failed to note in weighing his opinion.  Page 58-59.  Further, it is "clearly established law that the opinion of a non-treating 'one-shot' consultative physician or of a medical advisor cannot constitute substantial evidence to overcome the properly supported opinion of a physician who has treated a claimant over a period of years."  *Pickett v. Astrue*, No. 3:10-CV-177, 2011 WL 1626559, at *5 (S.D. Ohio Apr. 28, 2011) (citations omitted).

exertional work with only occasional balancing, stooping, kneeling, crouching, and climbing. PageID 53. Notably, although the ALJ, in her decision, states that she relied on the VE's testimony in finding that Plaintiff could perform his past relevant work, the VE never testified that Plaintiff could perform such work if limited to medium work and only occasional balancing, stooping, kneeling, crouching, and climbing. *See id*. The Court, therefore, finds the VE's testimony does not support the ALJ's conclusion that Plaintiff can perform his past relevant work.

An ALJ is "not required to solicit testimony from a VE in reaching his [or her] conclusion" as to whether a claimant is "capable of performing past relevant work[.]" *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010). Instead, the regulations state that an ALJ "*may* use the services of vocational experts . . . to obtain evidence . . . to help . . . determine whether [the claimant] can do . . . past relevant work, given [his or her] [RFC]." 20 C.F.R. § 404.1560(b)(2). Nevertheless, remand is appropriate where "the ALJ used the [VE's] testimony to assist him in deciding whether plaintiff could perform his past relevant work[,]" and "the VE's testimony is somewhat confusing." *See D'Angelo v. Comm'r of Soc. Sec.*, 475 F. Supp. 2d 716, 724 (W.D. Mich. 2007). Here, it is not clear from the VE's testimony that Plaintiff is capable of performing his past relevant work based upon the RFC determined by the ALJ. Accordingly, "on remand, the Commissioner should re-evaluate the evidence to determine whether plaintiff can perform his past relevant work[.]" *Id*.

Plaintiff also argues that the VE's testimony establishes that he is incapable of medium work" and, therefore, he is disabled as a matter of law under the Grid.[6]  Doc. 12 at PageID 1232. The ALJ considers the Grid "in the fifth and final stage of the disability determination, after it has been determined that the claimant has not met the requirements of a listed impairment but is nevertheless incapable of performing past relevant work." *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990).  Here, because the ALJ found, at Step Four, Plaintiff capable of performing his past relevant work, the Grid never came into the analysis.  *See Boggess v. Astrue*, No. 1:09CV70, 2010 WL 2010811, at *4 (E.D. Tenn. Apr. 27, 2010).

Further, Grid "Rule 202.06 directs a finding of disabled if the claimant falls within the 'advanced age' category and is limited to light work." *Maher v. Comm'r of Soc. Sec.*, No. 1:11-CV-1330, 2012 WL 3258099, at *8 (N.D. Ohio Aug. 8, 2012) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 202.06).  Here, however, the RFC determined by the ALJ does not limit Plaintiff to "light work" and, instead, limits him to a reduced range of medium work.  *See* 20 C.F.R. § 404.1567.  The VE's testimony does not change this fact.  *See Anderson v. Comm'r of Soc. Sec.*, 406 F. App'x 32, 35 (6th Cir. 2010) (stating that "[t]he VE does not testify as to what the claimant is physically capable of doing," and, instead, "the VE's testimony depends upon the RFC and not the other way around").  Simply put, "Plaintiff's inability to perform the full range of medium work does not mean that he only has the RFC to perform light work." *Obispo v. Astrue*, No. CV 11-9381-SP, 2012 WL 4711763, at *3 (C.D. Cal. Oct. 3, 2012)

For the foregoing reasons, the Court finds that the ALJ erred in relying on the VE's testimony to conclude Plaintiff is capable of performing his past relevant work.  The Court

---

[6] The Grid considers the vocational factors of age, education, work experience, and maximum sustained work capability.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 200.00(a).  A plaintiff's "maximum sustained work capability" is categorized as one of five "exertional levels" -- including the medium, light and sedentary exertional levels -- and is defined as "[t]he highest functional level a person can perform on a regular work basis[.]"  Soc. Sec. Ruling 83-10, 1983 WL 31251, at *6 (1983).  These exertional levels are defined "in terms of the primary strength activities required."  *Id.*; *see also* 20 C.F.R. § 404.1567.

further finds, however, that application of the Grid, at this point, does not direct a disability finding.

### C.     Credibility

In his final assignment of error, Plaintiff argues that the ALJ's credibility findings are unreasonable.  PageID 1237-39.  Given the Court's determination -- that the ALJ failed to properly weigh all medical source opinions of record, and erroneously relied on the testimony of the VE in determining that Plaintiff is capable of performing his past relevant work -- the Court makes no finding with regard to this alleged error.  Instead, upon remand, the ALJ shall analyze Plaintiff's alleged symptoms and determine his credibility anew.

### IV.

When the ALJ's non-disability determination is unsupported by substantial evidence, the Court must determine whether to remand the matter for rehearing or to order an award of benefits.  Generally, benefits may be awarded immediately "if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).  The Court may only award benefits where proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where proof of disability is overwhelming.  *Id.*

In this instance, evidence of disability is not overwhelming in light of differing medical opinion evidence.  *See* PageID 451-61.  Accordingly, the Court concludes that a remand for further proceedings is necessary for the ALJ to: (1) fully assess and meaningfully explain the weight to be accorded all medical source opinions; (2) determine whether Plaintiff is capable of performing his past relevant work and, if necessary, other work in the national economy, in light of his limitations; and (3) evaluate Plaintiff's credibility anew.

13

**V.**

For the foregoing reasons: (1) the Commissioner's non-disability finding is found unsupported by substantial evidence, and **REVERSED**; (2) this matter is **REMANDED** to the Commissioner under the Fourth Sentence of 42 U.S.C. § 405(g) for proceedings consistent with this opinion; and (3) this case is **TERMINATED** on the Court's docket.

**IT IS SO ORDERED**.


Date:  September 22, 2015                                  s/ Michael J. Newman
                                                          Michael J. Newman
                                                          United States Magistrate Judge